**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **SAMUEL JOSEPH WURZELBACHER,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **Case No. 2:09-cv-00162** |
| **v.** | : | |
| | : | |
| **HELEN JONES-KELLEY, et al.,** | : | **JUDGE ALGENON L. MARBLEY** |
| | : | **Magistrate Judge King** |
| **Defendant**s. | : | |

<u>**OPINION AND ORDER**</u>

## I. INTRODUCTION

This matter is before the Court on Defendants', Helen Jones-Kelley, Doug Thompson, and Fred Williams ("Defendants"), Joint Motion for Judgment on the Pleadings. (Dkt. 24.) Plaintiff, Samuel Joseph Wurzelbacher ("Plaintiff"), brings this action under 42 U.S.C. § 1983 for violation of his First and Fourteenth Amendment rights under the United States Constitution. Defendants assert that Plaintiff has not adequately pled his claims, and, in the alternative, that Defendants are entitled to qualified immunity.  For the reasons stated below, Defendants' Motion for Judgment on the Pleadings is **GRANTED**.

## II. BACKGROUND

Plaintiff is an individual and resident of the State of Ohio.  He was trained as a plumber by the United States Air Force, and, until recently, was employed by a small plumbing business near Toledo, Ohio.  Defendant Helen Jones-Kelley was the Director of the Ohio Department of Job and Family Services ("ODJFS").  Defendant Fred Williams was the Assistant Director of ODJFS.  Defendant Doug Thompson was the Deputy Director of Child Support within ODJFS.

On October 12, 2008, President Barack Obama, then Senator and presidential candidate, appeared on Plaintiff's street while campaigning.  Plaintiff joined the crowd and asked several questions of President Obama related to the impact that the President's tax plan would have on Plaintiff's ability to purchase a small business.  The questions posed by Plaintiff were recorded by the media, and replayed later on stations across the country.  After his exchange with President Obama, Plaintiff received and accepted numerous requests from the media to speak about his views of the President, and, in those appearances, criticized President Obama's policies.  During the third presidential debate, Senator John McCain referred to Plaintiff's questions, and referred to Plaintiff as "Joe the Plumber."  After the debate, Plaintiff continued to appear in the national media.

At all times relevant to Plaintiff's claims, Defendants were the three highest-ranking officials at ODJFS.  The ODJFS administers state programs including child support enforcement, the Temporary Aid to Needy Families ("TANF") cash assistance program, and unemployment compensation.  As part of these programs, ODJFS maintains confidential databases including: the Support Enforcement Tracking System ("SETS") for child support enforcement; the Client Registry Information System Enhanced ("CRIS-E") for records under the TANF program; and the Ohio Job Insurance ("OJI") database, which contains unemployment benefit records.  The Ohio Revised Code sections 5101.26 through 5101.30, and the Ohio Administrative Code Chapter 5101, section 1-1-3, govern the confidentiality and disclosure rules of these databases. Plaintiff alleges that ODJFS personnel are only permitted to access the databases to carry out official agency business, and that prior to being permitted to access the databases, ODJFS

employees are trained in areas related to confidentiality, safeguarding guidelines, and security procedures.

Plaintiff alleges that on October 16, 2008, four days after Plaintiff's interaction with President Obama, Defendants had a meeting at which they discussed "Joe the Plumber." Defendant Jones-Kelley then authorized searches related to Plaintiff on the SETS, CRIS-E, and OJI databases.  After the meeting, Defendant Thompson directed an agency employee to conduct an inquiry regarding Plaintiff in the SETS database, and Defendant Williams directed an agency employee to conduct a search related to Plaintiff in the CRIS-E database.  The agency employee who searched the CRIS-E database then contacted another employee to search the OJI database. The Complaint alleges that all three searches took place on October 16, 2008, that these searches were not related to any official agency business, and that Defendants authorized and directed the searches for the purpose of retrieving information on Plaintiff because of Plaintiff's interaction with President Obama and his subsequent media appearances.

Defendants were supporters of President Obama's campaign, and Defendant Jones-Kelley donated to the President's campaign, was a fundraiser, and volunteered to arrange a campaign event for First Lady Michelle Obama.

Plaintiff alleges that after the Defendants authorized and conducted searches in the databases, the Office of the Ohio Inspector General ("OIG") conducted an investigation and found "no legitimate agency function or purpose for checking on [Plaintiff's] name through SETS, CRIS-E, and OJI or for authorizing those searches."  (Compl. at 30.)  The OIG allegedly specifically found that: Defendant Jones-Kelley's authorization was not appropriate and that she committed a wrongful act by authorizing the searches; Defendant Thompson instructed an

agency employee to send an email to another agency official telling that official that the search was for an agency purpose; and that the email was an attempt to deceive as there was no agency purpose. Separately from the inquiry as to the search of Plaintiff's name, the OIG allegedly found that Defendant Jones-Kelly used state resources to engage in political activity for President Obama's campaign, and that those political activities were an inappropriate use of state resources.  After the OIG report was issue, Ohio Governor Ted Strickland suspended Defendants from their positions.  Allegedly, Defendant Jones-Kelley resigned her position prior to the end of her suspension, Defendant Williams resigned effective January 31, 2009, and Defendant Thompson was terminated from his position prior to the end of his suspension.

Plaintiff filed his Complaint on March 5, 2009.  Defendants moved for Judgment on the Pleadings on November 19, 2009.


### III. STANDARD OF REVIEW

A motion for judgment on the pleadings may be made "[a]fter the pleadings are closed but within such time as not to delay the trial."  Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings under Rule 12(c) attacks the sufficiency of the pleadings and is reviewed under the same standard applicable to a motion to dismiss under Rule 12(b)(6). *Ziegler v. IBP Hog Mkt.*, 249 F.3d 509, 511-12 (6th Cir. 2001).  "A motion to dismiss for failure to state a claim is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations."  *Golden v. City of Columbus*, 404 F.3d 950, 958-59 (6th Cir. 2005). Consequently, the Court must construe the complaint in the light most favorable to the non-moving party, accept all factual allegations as true, and make reasonable inferences in favor of

-4-

the non-moving party.  *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008)*; Murphy v. Sofamor Danek Gp., Inc.*, 123 F.3d 394, 400 (6th Cir. 1997). The Court is not required, however, to accept as true mere legal conclusions unsupported by factual allegations.  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 555, 127 S. Ct. 1955 (2007)).

Although liberal, the Rule 12(b)(6) standard requires more than the bare assertion of legal conclusions to survive a motion to dismiss.  *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citation omitted).  The complaint must "'give the defendant fair notice of what the claim is, and the grounds upon which it rests.'"  *Nader v. Blackwell*, 545 F.3d 459, 470 (6th Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200 (2007)).  While a complaint need not contain "detailed factual allegations," its "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 544, 127 S. Ct. at 1964.  A complaint that suggests "the mere possibility of misconduct" is insufficient; rather, the complaint must state "a plausible claim for relief."  *Iqbal*, 129 S.Ct. at 1950 (*citing Twombly*, 550 U.S at 556). A Rule 12(c) motion is granted only if there is an absence of law to support a claim of the type made or of facts sufficient to make a valid claim, or if on the face of the complaint there is an insurmountable bar to relief indicating that the plaintiff does not have a claim.  *Cmty. Mental Health Serv. v. Mental Health & Recovery Bd.,* 395 F. Supp. 2d 644, 649 (S.D. Ohio 2004).  Under the Federal Rules of Civil Procedure, "a copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."  Fed. R. Civ. P. 10(c); *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 296 (6th Cir. 2008).

## IV. LAW AND ANALYSIS

In order to establish a prima facie case under 42 U.S.C. § 1983, the statute under which Mr. Wurzelbacher brings his claims, "a plaintiff must prove the following elements: (1) the defendant must be acting under color of state law, and (2) the offending conduct must deprive plaintiff of rights secured by federal law." *Bloch v. Ribor*, 156 F.3d 673, 677 (6th Cir. 1998).

In this case, the Defendants were acting under the color of state law in their capacities as state government employees of the ODJFS; accordingly, the first element is met.  As to the second element, Plaintiff alleges that his First and Fourteenth Amendment rights were violated when the Defendants conducted a search of his name in various databases under the control of the ODJFS.  Plaintiff alleges that the database searches constitute a First Amendment retaliation claim because Defendants conducted the search after Plaintiff had spoken out at a political rally, and that the database searches also constitute a violation of his Fourteenth Amendment right to informational privacy.  Each claim is analyzed below to determine whether Plaintiff was deprived of his Constitutional rights, thereby meeting the second element.

### A. First Amendment Retaliation

In order to state a claim for First Amendment Retaliation, the plaintiff must show that: "1) the plaintiff engaged in constitutionally protected activity; 2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and 3) the adverse action was motivated at least in part by the plaintiff's protected conduct." *Fritz v. Charter Tp. of Comstock*, 592 F.3d 718, 723 (6th Cir. 2010) (citing to *Mezibov v. Allen*, 411 F.3d 712, 717 (6th Cir. 2005)).  In this case, assuming the factual

allegations to be true, Plaintiff has adequately pled that he was engaged in a constitutionally protected activity, viz. speech at a political gathering,  and that the alleged action – Defendants' searching of databases – was motivated by Mr. Wurzelbacher's protected speech.[1] This Court's inquiry, thus, focuses on whether Plaintiff has adequately plead an adverse action.

An adverse action is one "that would deter a person of ordinary firmness from exercise of the right at stake." *Mattox v. City of Forest Park*, 183 F.3d 515, 521 (6th Cir. 1999).  The standard for an adverse action balances two competing propositions: "[f]irst, the injury suffered need not be great because there is no justification for harassing people for exercise of their constitutional rights; but second, a constitutional tort – like any tort – requires injury, and allowing constitutional redress for every minor harassment may serve to trivialize the First Amendment." *Id.* (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 396-97 (6th Cir. 1999) (en banc)).  The Sixth Circuit has further stated that "[t]he plaintiff's evidentiary burden is merely to establish the factual basis for his claim that the retaliatory acts amounted to more than a de minimis injury."  *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002).

Courts are required to "tailor our analysis under the adverse action prong to the circumstances of this specific retaliation claim."  *Mezibov*, 411 F.3d at 721.  In this case, the question is whether a private citizen of ordinary firmness would be deterred from voicing his views at a political rally if he knew that government officials would search his name in confidential databases maintained by the agency for which the government official works. As the

_____

[1] Defendants argue that they did not intend to chill Plaintiff's speech, such that the third prong may not be met.  The third prong does not require that the adverse action was intended to chill speech, but rather than it was motivated by the protected conduct.  Defendants do not dispute that any internal search was motivated by Plaintiff's questions posed to President Obama.

Sixth Circuit noted in *Fritz*, "[t]here are very few cases in this Circuit addressing First Amendment retaliation against private individuals." 592 F.3d at 724. In *Fritz*, the court held that the plaintiff had sufficiently pled an adverse action where her complaint alleged that the township zoning board retaliated against her for publicly criticizing the board by having conversations with her employer that ultimately led to her termination, and by refusing her requests for zoning variances. In *Fritz*, the plaintiff's injury was not limited to harassment, embarrassment or emotional distress as it is in Mr. Wurzelbacher's case, but instead included the fact that her employment was terminated because of the retaliatory action taken by defendants. The facts in *Fritz* do not provide adequate guidance as to whether Plaintiff's complaint in this case is sufficient to state a claim of retaliation with regards to an adverse action This Court must, therefore, look beyond First Amendment retaliation precedent involving private individuals.

In *Mattox v. City of Forest Park*, the Sixth Circuit reversed the district court's denial of summary judgment to the defendant, City of Forest Park, and found that the plaintiffs did not show violation of their constitutional rights. 183 F.3d 515 (6th Cir. 1999). Dona Holly,[2] a volunteer and member of the Forest Park Fire Department, raised concerns about the fire department. The City Council ordered an investigation and report, and after the release of the report and accompanying video, Holly alleged that comments and statements in the written report constituted First Amendment retaliation as they were designed to punish her for her involvement in instigating the investigation. *Id.* at 518. Holly's complaint focused on the

---

[2]*Mattox* involved two plaintiffs, Dona Holly and Brenda Mattox. Brenda Mattox's claims are not discussed here as she was a public official at the time of the case, and the holding in *Mattox* specifically notes that public officials "may need to have thicker skin than the ordinary citizen when it comes to attacks on their views." *Id.* at 522.

revelation in the report and video of private information related to a traumatic childhood incident and her personal relationships with members of the fire department.  *Id.* at 522.  While the court recognized that Holly's personal statements were irrelevant to the investigation, and that making them public in retaliation for her exercise of her First Amendment rights would have been improper, the allegations did not rise to a First Amendment retaliation claim. *Id.* at 523.  The Sixth Circuit recognized that "in some cases injury based on embarrassment, humiliation, and emotional distress is sufficient to be actionable under § 1983,"  but that "[w]ithout minimizing any embarrassment she [Holly] may have suffered, the revelations at issue in this case do not rise to the level of those in *Bloch* or *Barrett*."  *Id.* at 521-23.  The Sixth Circuit reasoned that:

> ...neither the complaint nor the briefs allege concrete injuries suffered by Holly as a result of these revelations.  She offers only generalized statements about the effect on her character and reputation, about being held up to "ridicule, contempt, shame, and disgrace," and about the effect on her respectability, comfort, and position in society.  Nowhere does she attempt to concretize her personal injury.  Without anything more specific, we cannot say that this meets the constitutional threshold required for her claim of First Amendment retaliation to proceed.

*Mattox*, 183 F.3d at 523.

The cases in which the court found sufficient harm, *Block* and *Barrett*, are illustrative.  In *Bloch*, a police officer responded to a victim's criticism of his investigation of her rape by revealing to the media intimate and humiliating details about the rape, some of which the victim had not even shared with her husband.  *Bloch v. Ribor*, 156 F.3d 673, 679-80 (6th Cir. 1998).  In *Barrett*, a judge released a press statement in which she falsely accused a lawyer of stalking her.  The press statement was released in retaliation for criticisms the lawyer had made of the judge.  *Barrett v. Harrington*, 130 F.3d 246 (6th Cir. 1997).

Finally, in *Mezibov v. Allen*, the Sixth Circuit once again found that a generalized harm did not rise to the constitutional threshold for an adverse action.  The court held that where a defense attorney alleged that the prosecutor in the case made false statements about his capacity as a defense attorney, Mezibov, the defense attorney, was "expected to endure some scrutiny for his actions," and that "any harm to Mezibov as a result of Allen's speech is too minimal to be constitutionally cognizable.  Mezibov alleges no specific harm – only a generalized harm to his character and reputation." *Mezibov* at 722.

In their Motion, Defendants argue that Plaintiff has not alleged an adverse action because he did not suffer any specific injury as a result of the internal searching of confidential databases, and only alleges generalized harms related to embarrassment, humiliation, and emotional distress.  Defendants also focus on the fact that Plaintiff has not alleged that Defendants publicized or revealed the results of any of the database searches in order to chill Plaintiff's rights.  Plaintiff argues that his allegations that Defendants conducted searches in confidential state databases in order to seek sensitive information about Plaintiff because of the questions he asked of President Obama are sufficient to demonstrate an adverse action, and that whether Defendants publicized or disclosed their investigation is irrelevant because the harm is constituted by the search itself, not its disclosure.[3]  Plaintiff also argues that alleging suffering

---

[3]Although this Court does not reach the issue of whether public disclosure of information is required in order to allege sufficiently an adverse action, it should be noted that Plaintiff did not rely on, nor has this Court found, a case in which an adverse action consisted of an internal agency investigation where the state officials involved did not make a public disclosure.  In fact, in *Bloch v. Ribor*, the Sixth Circuit noted, in distinguishing the facts of *Bloch* from prior precedent, that the Sixth Circuit had previously held that "the future possibility of a misuse of information, as opposed to an action alleging that a misuse had already occurred, could not be actionable...."  156 F.3d at 680.  Nowhere in his Complaint does Plaintiff allege that Defendants discovered information about him, or that such information, if discovered, was released or

emotional distress, harassment, personal humiliation, and embarrassment is sufficient to maintain his § 1983 retaliation claim. Finally, Plaintiff argues that the allegation that the internal agency review found that Defendants had engaged in a wrongful and inappropriate acts provides support for the claim of an adverse action. While this allegation certainly supports a finding that the Defendants' actions were improper, and perhaps worthy of discipline, it does not necessarily indicate that the actions rise to the level of a constitutional violation. *See Paul v. Davis*, 424 U.S. 693, 698 (1976) ("Violation of local law does not necessarily mean that federal rights have been invaded.").

Plaintiff is correct in his assertion that the Sixth Circuit has recognized that injury based on embarrassment, humiliation, and emotional distress may be sufficient to state a claim under § 1983, *see supra Mattox*, 183 F.3d at 521-23. As discussed above, however, Plaintiff must allege more than a generalized harm, and while a harm need not be great, it also may not be so minimal as not to amount to a constitutionally cognizable injury. *Mezibov*, 411 F.3d at 722; *Mattox v. City of Forest Park*, 183 F.3d at 523; *Thaddeus-X v. Blatter*, 175 F.3d 378, 396-97 (6th Cir. 1999). In the Sixth Circuit, the First Amendment retaliation claims that alleged injury based on embarrassment, humiliation, and emotional distress involved public disclosure by public officials of extremely intimate and personal details of a rape, and false public accusations of stalking by a judge about a lawyer who appeared in her courtroom. *Bloch*, 156 F.3d at 679-80; *Barrett*, 130 F.3d at 246. In *Mattox*, however, public disclosure of personal statements, including a traumatic childhood incident, did not amount to a sufficient injury; and in *Mezibov*, false statements about an attorney's performance also did not amount to anything more than a generalized harm. In this

---

misused in manner.

case, as in *Mattox*, Plaintiff does not allege concrete personal  injuries, but instead alleges only the generalized allegation that "[a]s a direct and proximate result of these violations of his constitutional rights, Plaintiff suffered substantial damages, including emotional distress, harassment, personal humiliation, and embarrassment."  (Compl. at ¶ 45.)  Without allegations of a more specific and concrete nature as to the harms he suffered, Plaintiff does not meet the constitutional threshold required to state a claim for First Amendment retaliation.

Accordingly, the Defendants' Motion for Judgment on the Pleadings is **GRANTED** as to Plaintiff's First Amendment Retaliation Claim (Count I of the Complaint).

### B. Fourteenth Amendment Right to Informational Privacy

There are two  legal principles that developed from the constitutional right to privacy arising out of the Fourteenth Amendment.  *Bloch*, 156 F.3d at 683 (citing *Whalen v. Roe*, 429 U.S. 589 (1977)). The first principle "protects an individual's right to make certain person choices," such as the right for a woman to terminate a pregnancy as affirmed by the Supreme Court.  *Roe v. Wade*, 410 U.S. 113 (1973).  The second principle "protects an individual's right to control the nature and extent of information released about that individual."  *Whalen*, 429 U.S. at 683.  This second principle, at issue in this case, has been termed an "informational right to privacy." *Bloch*, 156 F.3d at 683.

Unlike other circuits, which have interpreted the right to informational privacy broadly, the Sixth Circuit "has narrowly construed the holdings of *Whalen* and *Nixon [v. Adm'r of Gen. Servs.*, 433 U.S. 425 (1977)] to extend the right to informational privacy only to interests that implicate a fundamental liberty interest." *Id.* at 684 (citing *J.P. v. DeSanti*, 653 F.2d 1080, 1090

(6th Cir. 1981)).  In *DeSanti*, the Sixth Circuit held that the right to informational privacy is only triggered when the individual's interests at stake relate to "those personal rights that can be deemed 'fundamental' or 'implicit in the concept of ordered liberty.'"  *DeSanti*, 653 F.2d at 1090.

In *DeSanti*, the court developed a two-step inquiry for informational privacy claims: 1) whether the interest at stake implicates a right that is either fundamental or implicit in the concept of ordered liberty; and 2) whether the government's interest in releasing the information outweighs the individual's interest in keeping the information private.  *Id.* at 1090-91.

This Court must, therefore, determine whether the rights that Defendants allegedly violated implicate a fundamental liberty interest. While there is no comprehensive list as to which rights are fundamental or implicit to the concept of ordered liberty, in *Paul v. Davis* the Supreme Court listed the following areas: "matters relating to marriage, procreation, contraception, family relationships, and child rearing and education." 424 U.S. 693, 713 (1976); *see also DeSanti*, 653 F.2d at 1087 (listing a woman's right to choose; decisions relating to marriage; procreation; contraception; family relationships; and child rearing and education).  In addition to the areas listed above, this Court is also guided by cases in which a right to informational privacy has or has not been recognized.  In *Whalen*, 429 U.S. at 591-93, the Supreme Court found that there was a right to privacy as to medical records, but that the state's interest in preventing drug abuse outweighed the privacy interest.  In *Paul*, the Supreme Court held that where the police circulated a flyer with a photograph and description of plaintiff's arrest, there was no right to privacy as to a plaintiff's arrest record for shoplifting.  424 U.S. at 713.

-13-

Only in limited circumstances has the Sixth Circuit found that a privacy interest implicates a fundamental right.  In *DeSanti*, the Court held that the release of social histories and court records of delinquent juveniles to governmental, social, and religious agencies "is far afield from those privacy rights that are fundamental or implicit in the concept of ordered liberty." *DeSanti*, 653 F.2d at 1090 (internal citations omitted).  Then, in *In re Zuniga*, the court found that psychiatric patients' right to prevent their doctor from releasing their names and length of treatment implicated a fundamental right but was outweighed by the state's interest in obtaining the information.  *In re Zuniga*, 714 F.2d 632, 642 (6th Cir. 1983). In *Kallstrom v. City of Columbus*, the Sixth Circuit held that a police officer had a right to privacy in his personal files that were released to a violent gang because the interest implicated a fundamental right as to the preservation of his life and the life of his family members.  136 F.3d 1055, 1062 (6th Cir. 1998). Similarly, in *Bloch*, the Sixth Circuit held that a fundamental liberty interest as to personal sexual matters was at stake where a sheriff publicly released explicit sexual details and history of a woman who had been raped and no penalogical purpose was served. 156 F.3d at 686.  Finally, in *Barber v. Overton*, the Sixth Circuit held, as to the release of social security numbers and birth dates of corrections officers to inmates, that "[i]n light of our narrow reading of the substantive due process right to non-disclosure privacy, we conclude that the release of social security numbers was not sensitive enough nor the threat of retaliation apparent enough to warrant constitutional protection here."  496 F.3d 449, 456 (6th Cir. 2007).

In their Motion, Defendants argue that Plaintiff has not alleged that the privacy interest at stake in his claim implicates a fundamental right as required by the case law in the Sixth Circuit. Plaintiff counters that the "right to be let alone" by the government has been recognized by

-14-

several courts.  None of the cases to which Plaintiff cites, however, is a case out of the Sixth

Circuit.  As explained by this Court, the Sixth Circuit, *unlike* other circuits, "has narrowly

construed the holdings of *Whalen* and *Nixon* to extend the right to informational privacy only to

interests that implicate a fundamental liberty interest."  *Bloch*, 156 F.3d at 684.  Plaintiff points

to no case law, and this Court has been unable to find any case law, that would support a

determination by this Court that Plaintiff's privacy interest in the information in the databases

maintained by ODJFS in particular would implicate a fundamental right.[4]

  While Plaintiff's allegations, if found to be true, may have been in  violation of Plaintiff's

privacy, they do not amount to a *constitutional* violation of privacy, and Plaintiff's interest at

stake do not implicate a fundamental liberty interest.  As the Sixth Circuit stated in *DeSanti*, "not

all rights of privacy or interests in nondisclosure of private information are of constitutional

dimension..."  *DeSanti*, 653 F.3d at 1091;  *Barber*, 496 F.3d at 457.  Such is the case here.

  The Defendants' Motion for Judgment on the Pleadings as to Plaintiff's Fourteenth

Amendment privacy claim is, therefore, **GRANTED**.

---

  [4]Defendants additionally argue that because Plaintiff does not allege any disclosure of information, there can be no Fourteenth Amendment informational privacy claim.  Plaintiff does not address this issue in his response.  While this Court agrees that the right to informational privacy is often phrased as a right to nondisclosure of information, and that all of the cases cited above relate to *disclosure* of information, this Court need not reach the issue as it is clear that Plaintiff has not alleged that a fundamental right is at stake.

### C. Qualified Immunity

As this Court finds that Plaintiff has failed to state a claim upon which relief may be granted as to both Counts of the Complaint, the Court need not address the issue of qualified immunity.

### V. CONCLUSION

Accordingly, and for the reasons stated above, Defendants' Motion for Judgment on the Pleadings is **GRANTED** as to both Counts I and II.  This case is **DISMISSED**.


**IT IS SO ORDERED.**


**  s/Algenon L. Marbley                  **
**ALGENON L. MARBLEY, JUDGE**
**United States District Court**


**DATE: August 4, 2010**

-16-